Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2257 | DATE | 6/27/2002 |
| CASE TITLE | ASHTON T. ADGER, JR. vs. JOHN E. POTTER | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 01 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 02 JUN 28 PM 4:21 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ASHTON T. ADGER, JR.,

    Plaintiff,

v.

JOHN E. POTTER, Postmaster General of the United States Postal Service,

    Defendant.

No. 01 C 2257

Judge John W. Darrah

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ashton T. Adger, Jr., ("Adger"), filed suit against defendant, John E. Potter, as Postmaster General of the United States Postal Service ("USPS"), alleging color, race, age, and disability discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*; and the Age Discrimination in Employment Act of 1967 "(ADEA"), 29 U.S.C. § 621 *et seq.*[1] Presently before the Court is Defendant's Motion for Summary Judgment based on Adger's failure to exhaust administrative remedies and his failure to timely file the present lawsuit.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in

---

[1] Plaintiff's *pro se* complaint incorrectly cites 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") as possible bases of his claims. Section 1983 is not applicable to employment discrimination claims against a federal agency, *McGuinness v. United States Postal Service*, 744 F.2d 1318, 1322 (7th Cir. 1984); and the United States is not an "employer" as that term is defined in the ADA, 42 U.S.C. § 12111(5)(B).

the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the instant case, Adger has not disputed any of the USPS's statements of material facts. Therefore, all the material facts averred by the USPS are deemed admitted. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); L.R. 56.1(b)(3)(B). Although Adger failed to respond to the USPS's statement of material facts and such facts are deemed admitted, the USPS's Motion for Summary Judgment will only be granted if the USPS can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Johnson v. Gudmundson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

Adger began working for the USPS as a "casual" employee, intermittently, from November 4, 1991 until January 6, 1996. A "casual" employee is a non-career, temporary employee, who is limited to two 90-day appointments and one 21-day appointment during the Christmas season per calendar year. (Def.'s 56.1(a)(3) Statement ¶ 4). In 1995, Adger applied for the position of Postal Mail Carrier. In September 1995, Adger was informed he was not chosen for the Postal Mail Carrier position. (Def.'s 56.1(a)(3) Exhibit B6).

In October 1995, Adger made a request for Equal Employment Opportunity ("EEO") counseling regarding his non-selection for a position as a Postal Mail Carrier. (Def.'s 56.1(a)(3) Statement ¶ 8). The USPS provided Adger with an information booklet that gave an overview of the EEO complaint process and explained his rights and responsibilities in the process. The USPS also provided Adger with Postal Service Form 2564-A, Information For Precomplaint Counseling,

for him to use to explain the details of his complaint. (Id., at ¶ 9). Adger completed the form, challenging his non-selection for the position of Postal Mail Carrier (hereinafter "1995 Complaint"). As a resolution of his 1995 Complaint, Adger sought punitive and compensatory damages, back pay, and to be placed in the position of Postal Mail Carrier. (Id., at ¶ 10).

On January 6, 1996, Adger was hired by the USPS as a part-time flexible career employee in the position of Mail Processor. (Def.'s 56.1(a)(3) Statement ¶ 5). On March 26, 1996, Adger was issued a "Notice of Termination" ("Notice") during his probationary period for failing to meet the attendance requirements of his position. On April 16, 1996, the Notice was rescinded by agreement of Adger's union and the USPS. Adger returned to work on April 19, 1996. (Id., at ¶ 6).

On July 17, 1996, Adger was issued another Notice for failing to meet the attendance requirements of his position. On August 19, 1996, the Notice was rescinded by agreement of Adger's union and the USPS. (Def.'s 56.1(a)(3) Statement ¶ 7).

In February 1997, following a period of informal counseling that failed to resolve Adger's 1995 Complaint, Adger was notified that he had the right to file a formal complaint of discrimination. Adger filed his formal complaint of discrimination on February 23, 1997 (hereinafter "1995 Formal Complaint") (Def.'s 56.1(a)(3) Statement ¶ 11). In box 13 of the 1995 Formal Complaint, where the form asks the complainant to state the specific actions or situation that resulted in the allegations of discrimination, Adger did not state any specific actions; instead, he stated that he was then hospitalized and needed time to obtain and provide documentation for his claim. (Id., at ¶ 12).

On June 17, 1997, the USPS sent Adger a letter stating that his complaint of discrimination had been accepted for investigation and that the scope of the investigation would be limited to his

allegation that he had not been hired for the Postal Mail Carrier position in 1995. The letter specifically cautioned Adger that if he believed that other issues were presented in his 1995 Formal Complaint, he was required to provide a written objection within seven days. (Def.'s 56.1(a)(3) Statement ¶ 13). Adger did not object to the scope of the investigation as defined by the USPS. (Id., at ¶ 14).

On May 20, 1998, the EEO investigator sent Adger a letter requesting him to submit an affidavit providing information about his claim of discrimination. The investigator provided Adger a series of specific questions addressing the factual details of Adger's claim and requested that these questions be addressed in Adger's affidavit. Adger did not respond to the EEO investigator's request. (Def.'s 56.1(a)(3) Statement ¶ 15). On June 5, 1998, the EEO investigator sent Adger a second letter requesting the same information. Adger failed to respond to the second letter. (Id., at ¶ 16).

In January 1999, the EEO investigation was completed. Adger was notified that he had the option of requesting a hearing before an administrative judge or a final agency decision without a hearing. Adger did not respond, and the USPS issued a final agency decision on April 5, 1999, denying Adger's administrative complaint of discrimination. (Def.'s 56.1(a)(3) Statement ¶ 17). A notice was appended to the final agency decision, informing Adger that he had ninety days to file suit in district court if he so desired. The notice further advised that, alternatively, he could appeal the final agency decision to the Equal Employment Opportunity Commission ("EEOC") within thirty days. (Id., at ¶ 19). Adger received the final agency decision on April 8, 1999, as established by the certified return receipt card attached to the decision. (Id., at ¶ 18). Adger did not file a complaint in district court within 90 days or appeal the final agency decision to the EEOC within 30 days. (Id.,

4

at ¶ 19).

On March 30, 2001, Adger filed the instant suit. The facts within Adger's complaint "supporting the plaintiff's claim of discrimination" are that he was terminated twice in 1996 while in the hospital and that the USPS falsified documentation to help terminate him from his job, including calling the Postal Police and filing false police reports. (Complaint ¶ 13). Adger never filed an administrative complaint with the Postal Service regarding his two terminations in 1996. Neither did Adger give the EEOC notice pursuant to 29 U.S.C. § 663a(d) of his intent to sue for the 1996 terminations. (Def.'s 56.1(a)(3) Statement ¶ 20).

Federal employees asserting Title VII or Rehabilitation Act claims must exhaust the administrative remedies available to them in a timely fashion before they may assert their claims in a lawsuit. 42 U.S.C. § 2000e-16(a), (c); *Brown v. General Serv. Admin.*, 425 U.S. 820, 832 (1976); *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001); *McGuinness v. United States*, 744 F.2d 1318, 1320 (7th Cir. 1984).

A federal employee alleging discrimination under Title VII or the Rehabilitation Act must consult an EEO counselor within forty-five days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a). An attempt is then made to resolve the matter through informal counseling. *See generally*, 29 C.F.R. § 1614.105. If the matter is not resolved through informal means, the complainant must file a formal complaint of discrimination with the employing agency. 29 C.F.R. § 1614.106. The formal complaint must describe the discriminatory action(s) or practice(s) that form the basis of the complaint. 29 C.F.R. 1614.106(c). After an investigation, a copy of the file is provided to the complainant, who then has the option of requesting an immediate final decision from the employing agency or of requesting a hearing before an administrative judge. 29 C.F.R. §

1614.108(f). If the employee is not satisfied with the final agency decision of the employing agency or the administrative judge, the complainant has 90 days to file a civil action in district court, 29 C.F.R. § 1614.407(a), or 30 days to appeal the final decision to the EEOC, 29 C.F.R. § 1614.402. If the complainant chooses to appeal to the EEOC, the complainant can still file suit in federal court within ninety days of receiving an adverse decision from his or her EEOC appeal. 29 C.F.R. § 1614.407.

A federal employee claiming discrimination under the ADEA may, but is not required to, follow the above procedures. If the complainant does follow the above procedures, he may file suit in the district court if he or she is dissatisfied with the outcome of the administrative process. 29 U.S.C. § 633a(b); 29 C.F.R. § 1614.103(a). In the alternative, the complainant may file suit in the district court, subject to the requirement that the complainant first give the EEOC thirty days' notice of his intent to sue within 180 days after the occurrence of the discriminatory action. 29 U.S.C. § 633a(d); 29 C.F.R. 1614.201; *see Bohac v. West*, 85 F.3d 306, 309 (7th Cir. 1996).

Adger alleges, in the present suit, that the USPS discriminated against him when it twice terminated his employment in March and July 1996. Prior to this time, in October 1995, Adger filed his complaint of discrimination regarding his non-selection as a Postal Mail Carrier. Following the two terminations, and recisions of such terminations, Adger filed his 1995 Formal Complaint. In the 1995 Formal Complaint, Adger indicated that the discrimination took place "start Tour # 1 12/26/96 both before and after this date". The specific actions section of the 1995 Formal Complaint did not state any specific actions; instead, it stated that Adger was hospitalized and required additional time. Subsequently, Adger was informed that the scope of the investigation, based on his 1995 Formal Complaint, would be limited to Adger's claim that he had not been hired as a Postal

6

Mail Carrier. The notification indicated that, if Adger did not agree with the scope, he needed to respond within seven days. Adger did not respond. Adger also failed to respond to any other correspondence and requests for information regarding the alleged discrimination.

The USPS argues that Adger failed to exhaust his administrative remedies for his present cause of action. Adger argues that the February 1995 Formal Complaint was not limited to the USPS's failure to hire Adger as a Postal Mail Carrier but included his two terminations in 1996. The above undisputed facts demonstrate that the 1997 Formal Complaint was limited to the failure of the USPS to hire Adger as a Postal Mail Carrier, that Adger was informed that the 1995 Formal Complaint was so interpreted, and Adger failed to object to such interpretation. Adger provides no undisputed facts demonstrating that a genuine issue of material fact exists as to whether the 1995 Formal Complaint included the two 1996 terminations.

Adger also argues that he may pursue his claims relating to the two 1996 terminations because such claims fall within the scope of the 1995 Formal Complaint.

A plaintiff may pursue claims not explicitly included in an EEOC complaint only if the allegations fall within the scope of the charges within the EEOC complaint. *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (*Conley*). To fall within the scope of the earlier allegations, the court must determine whether the allegations are "like or reasonably related to those contained in the charge". *Conley*, 215 F.3d at 710 (internal quotations omitted).

Adger fails to present any undisputed facts demonstrating that the complaints regarding his two terminations, after he originally complained about discrimination for not being hired as a Postal Mail Carrier, are like or reasonably related to the charges in the 1995 Formal Complaint. The 1995 Formal Complaint was not interpreted as constituting allegations of discrimination except those

7

related to not being hired as a Postal Mail Carrier; Adger has never, until responding to the present motion, disputed such interpretation.

Even if, Adger's present complaint, regarding his two 1996 terminations, was interpreted as being included in his 1995 Formal Complaint, Adger's claims are barred because he did not file the instant action within 90 days of receiving the adverse decision by the USPS, and he did not appeal the final decision to the EEOC within 30 days of the final agency decision.

Acknowledging that he did not file the present suit in a timely manner, Adger argues that his claims are not time-barred because the time should be tolled by the doctrine of equitable tolling. Adger alleges that his physical, emotional, and mental afflictions, including post-traumatic stress disorder, have prevented him from adequately and diligently conforming with the timing requirements.

Illness tolls a statute of limitations only if the illness in fact prevented the plaintiff from managing his affairs and, therefore, from understanding his legal rights and acting upon them. *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) (*Miller*). For equitable tolling to apply based on medical or mental health issues, the plaintiff must demonstrate that (1) a physical or mental condition prevented him from filing during the specified time period and (2) the condition existed for the majority of the filing period. *Dallmann v. Saturn of Chicago*, 1996 WL 41240 (N.D. Ill. Jan. 31, 1996).

In support of his argument, Adger avers in an affidavit that he has suffered from post-traumatic stress disorder since the 1970's and that he continues to suffer from the disease to this day. He was admitted to the hospital for treatment for his post-traumatic stress disorder from June 10, 1995 to July 15, 1994; from March 6, 1996, to March 22, 1996; and from February 20, 1997 to

8

March 1997. He was also hospitalized from July 13, 1996 to July 16, 1996 for cardiac problems; received treatment for stress-induced blackouts on January 13, 1997, for a retinal tear on March 19, 2001, and a torn rotator cuff on September 15, 2001; and was involved in a car accident on October 4, 2001.

Adger received the final agency decision and the notification of his rights concerning the final agency decision on April 8, 1999. Other than Adger's ongoing post-traumatic stress disorder, all of the other illnesses he suffered occurred and were treated either well before or after he received the final agency decision. Adger was not hospitalized for any illness during the applicable time period. As to the post-traumatic stress disorder, Adger, by his own admission, has suffered from the disorder since the early 1970's and was suffering from such disorder when he filed his grievances with the union concerning his two 1996 terminations and when he filed both the informal and formal complaint of discrimination. Accordingly, equitable tolling is not applicable. *See Miller*, 77 F.3d at 192 (finding that equitable tolling did not apply - if plaintiff could attend two semesters of college, he could complain to the EEOC); *Chaney v. City of Chicago*, 1996 WL 718519 (N.D. Ill. Dec. 12, 1996) (plaintiff failed to establish he did not have the capacity to bring cause of action in proper time, in part, because he knew to file grievance with union and applied for several other positions).

For the reasons stated above, the Defendant's Motion for Summary Judgment is granted.

Dated: June 27, 2002

JOHN W. DARRAH
United States District Judge